

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

UNITED STATES OF AMERICA     CASE NO:   21-9064 MJ

V.

JERRY WAYNE STORY

REDACTED
ELECTRONIC CRIMINAL COMPLAINT

(Under Seal)

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## COUNTS 1-15

On or about the dates listed below, in the District of Arizona and elsewhere, the defendant, JERRY WAYNE STORY, knowingly and willfully threatened to kill and to inflict bodily harm upon Individual 1, a member of the immediate family of Donald John Trump, who was at that time the President of the United States, by making threats via Twitter, as follows:

| Count | Date | Redacted Summary of Statement |
|---|---|---|
| 1 | June 2, 2020 | @[Individual 1] A threat to kill and inflict bodily harm upon Individual 1 |
| 2 | June 2, 2020 | @[Individual 1] A threat to kill and inflict bodily harm upon Individual 1 |
| 3 | June 2, 2020 | @realDonaldTrump A threat to kill and inflict bodily harm upon Individual 1 |
| 4 | June 2, 2020 | @realDonaldTrump A threat to kill and inflict bodily harm upon Individual 1 |
| 5 | June 2, 2020 | A threat to inflict bodily harm upon Individual 1 |
| 6 | June 2, 2020 | A threat to kill and inflict bodily harm upon Individual 1 |
| 7 | June 3, 2020 | @[Individual 1] A threat to kill and inflict bodily harm upon Individual 1 |
| 8 | June 3, 2020 | @[Individual 1] A threat to kill and inflict bodily harm upon Individual 1 |

| Count | Date | Redacted Summary of Statement |
|---|---|---|
| 9 | June 3, 2020 | @[Individual 1] A threat to kill and inflict bodily harm upon Individual 1 |
| 10 | June 7, 2020 | @[Individual 1] A threat to inflict bodily harm upon Individual 1 |
| 11 | June 7, 2020 | @[Individual 1] A threat to kill and inflict bodily harm upon Individual 1 |
| 12 | June 7, 2020 | @[Individual 1] A threat to inflict bodily harm upon Individual 1 |
| 13 | June 8, 2020 | @[Individual 1] A threat to kill and inflict bodily harm upon Individual 1 |
| 14 | June 8, 2020 | @[Individual 1] A threat to kill and inflict bodily harm upon Individual 1 |
| 15 | June 9, 2020 | @realDonaldTrump A threat to inflict bodily harm upon Individual 1 |

In violation of Title 18, United States Code, Section 879.

I further state that I am a Special Agent with the United States Secret Service, and that this Complaint is based on the following facts:

**See attached Statement of Probable Cause, incorporated herein**

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

REVIEWED BY AUSA: *William G. Voit*  Digitally signed by WILLIAM VO
Date: 2021.02.25 12:53:40 -07'(

Pursuant to 28 U.S.C. §1746(2), I declare under penalty of perjury that the foregoing is true and correct.

__X__ Sworn to and Subscribed by Telephone.

James Lamerson, Special Agent, U.S. Secret Service
Complainant's Name and Title

Complainant's Signature

2/25/2021 @ 2:26pm
Date/Time

Phoenix, Arizona
City and State

Hon. Eileen S. Willett, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# REDACTED ELECTRONICALLY-SUBMITTED

# STATEMENT OF PROBABLE CAUSE

Your affiant, James Lamerson, a Special Agent with the United States Secret Service, being first duly sworn, hereby deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Your affiant makes this affidavit in support of a Complaint for violations of Title 18, United States Code, Section 879 (Threats Against Protected Persons). Specifically, there is probable cause to believe that in June 2020, Defendant JERRY WAYNE STORY, making use of Twitter Inc. (Twitter) profile "@JerrySt66983610," issued threats to physically injure and kill Individual 1 [*further identity information redacted*]. Individual 1 was at that time a person covered by 18 U.S.C. § 879, in that she was a member of the immediate family of Donald John Trump, then the President of the United States.

2. A table of the threats to be charged is provided below, but briefly summarized, STORY repeatedly threatened to [*specific threats to kill and inflict bodily harm upon Individual 1 redacted*].

3. The information in this affidavit was developed by me and/or provided to me by other law enforcement officers, and other persons, in connection with the U.S. Secret Service investigation. The information contained in this affidavit is from my personal knowledge, as well as from information provided to your affiant by other law enforcement officers and/or witnesses, including those listed herein. Due to the fact that

this affidavit is being made to establish probable cause, your affiant has not listed each and every fact known regarding this investigation.

4. Your affiant is a Special Agent (SA) of the United States Secret Service (USSS) and has been so employed since 2018. As an SA of the USSS, your affiant is an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer of the United States who is authorized by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18.

5. Your affiant has attended the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. During CITP your affiant was instructed on Federal criminal investigations, including fraud and money laundering, among other topics. Following my graduation from FLETC, I attended the Special Agent Training Course at the USSS Regional Training Facility located in Beltsville, Maryland, where your affiant was instructed in dignitary protection and tactics, basic computer forensics, counterfeit investigations, and fraud investigations, among various other criminal justice topics.

6. Prior to my employment as a Special Agent with the USSS, I was a Law Enforcement Officer in the State of Arizona becoming certified in December 2007 at the Northern Arizona Regional Training Academy (NARTA). The training at NARTA included, among other topics, criminal law and criminal investigation. Following my graduation from NARTA, your affiant worked as a patrol officer, and later as a detective (as well as a crisis negotiator) for the City of Prescott Police Department. Your affiant's investigations as a detective included fraud schemes, first degree murder, and narcotics

violations, among other crimes. In 2014, your affiant became employed as a Special Agent with the Arizona Attorney General's Office, where I investigated crimes including manslaughter, fraud, and various drug-diversion related crimes.

## PROBABLE CAUSE

7. On October 23, 2020, your affiant received information from the USSS Protective Intelligence Division (PID) that, in June of 2020, an unknown subject using social media platform Twitter user handle "@JerrySt66983610" made threatening statements towards the President of the United States Donald Trump, Individual 1, and [*specific threats and further family information redacted*]. This account displayed the name "Jerry Story." PID provided screenshots of the threats, one example of which is pasted below (highlighting and arrow added): [*Screenshot of threats redacted*]

8. A Grand Jury subpoena resulted in a response of records from Twitter regarding account "@JerrySt66983610." Twitter listed the user's IP address as "70.190.228.247," the account creation date on May 31, 2020, the Account ID number as "1266999356164419586," and the email address registered to the account as "jaystory0121@gmail.com."

9. Per ARIN (American Registry of Internet Numbers), an online resource, it was determined the aforementioned IP address is serviced by Cox Communications. A Grand Jury subpoena was issued to Cox Communication regarding subscriber information for the IP address provided by Twitter. Cox Communication responded identifying the subscriber as "T.B." (name redacted by your affiant).

3

10. T.B. is the mother of a man named Jerry Wayne Story (STORY), which is consistent with the "Jerry Story" display name on the Twitter account. As noted further below, STORY was reported to come to his mother's residence regularly.

11. Your affiant conducted a search of STORY through the Arizona Department of Public Safety's Criminal Justice Information System, which shows he has a criminal record indexed under FBI # V3XX8DD5V/ SID # AZ25825292 showing previous arrests for disorderly conduct, threats, criminal damage, violation of an order of protection, possession of drug paraphernalia, and possession of marijuana.

12. On November 4, 2020, your affiant contacted T.B. via telephone. Upon contact, your affiant advised T.B. it appeared STORY made some concerning statements on Twitter. T.B. responded she believed her son would do something like that, and said her son is not well. T.B. went on to say STORY is "very angry about a lot of things," and she does not know what is wrong with him. When asked further about STORY's background, T.B. said in high school STORY was a baseball athlete and he started doing steroids (which made him aggressive and angry), which led to him using cocaine and eventually to methamphetamine use.

13. T.B. added STORY had a history as a "stalker," explaining STORY had an order of protection issued against him by an ex-girlfriend after he sent her threatening messages (which she said occurred approximately 1½ years prior). T.B. added "he's pretty mean with his words," but added she does not know if he could hurt someone.

14. When asked if STORY has a contact telephone number, T.B. responded she has given STORY multiple phones in the past, but he always loses or sells them. She

4

said she believes STORY has mental health issues but does not have any official mental health history. T.B. added she wants to get STORY into some type of treatment, since he is very angry. T.B. added she has had people tell her they are afraid of STORY because "his anger is so strong." T.B. added that STORY has been to jail and comes to her residence on a daily basis.

15. On November 6, 2020, your affiant drove to T.B.'s residence, and upon contact with T.B., she eventually admitted STORY was located at an apartment near her apartment. Upon contact with STORY, when shown a printout of the Twitter profile for "@JerrySt66983610," STORY responded he has not had a phone for a long time. STORY said the last email account he used was jerrystory02@gmail.com. When asked if the email ended in "1020" or "0120," STORY responded no, saying it only ended in two numbers.

16. When asked, STORY admitted to having a Twitter profile, but denied "@JerrySt66983610" was his profile, saying he would not put all of the numbers after his name nor would he have put "criminal world" in his profile. Later in the interview, STORY said he had no memory of putting the numbers or criminal world in his profile (when asked later in the interview if he has amnesia, STORY responded he does not). When asked why he had a Twitter account, STORY responded he did not have any followers, but would look at other people's posts.

17. When asked, STORY said he does not know Individual 1 and he had no reason to post anything about Individual 1, adding that she's "a billionaire's daughter," and "I'm a poor kid." Your affiant responded to STORY we were already aware he made

5

the statements, and STORY responded "right." When told the USSS was trying to determine if he is an actual threat to a USSS protectee, STORY responded, "I don't know her at all," and said he does not remember making any statements about Individual 1.

18. When asked, STORY said he has used a cell phone to access Twitter and does not own a desktop or laptop computer. He also said he cannot remember the last time he had possession of a phone.

19. When asked if he had any history of stalking or harassment, STORY responded "no." When questioned further STORY said he had never been arrested for stalking, but had a couple restraining orders against him. When asked if he had ever sent threatening text messages to anyone, or their family members, STORY responded "no."

20. When asked if he uses drugs or alcohol, STORY responded "no," and then added that "every now and then I'll drink a beer," further specifying light beer. When asked about illicit drugs, STORY said he does not use hard drugs, saying he partied in college and high school. I asked if he currently uses methamphetamines, and STORY responded he did not and said he does not have an addiction problem.

21. [*Information regarding medical history redacted*][1]

22. Prior to STORY's interview, I reviewed Phoenix Police reports relating to STORY, which included the following:

- Incident 201900001054129, dated June 20, 2019, in which STORY was reported as having sent threatening text messages to his ex-girlfriend and her sister

---

[1] [*Information regarding medical history redacted*]

(in violation of an order of protection) stating that he was going to kill her boyfriend and her father, and harm her sister.

- Incident 201800001682391, dated September 22, 2018, in which STORY was reported as a suicidal subject, and when contacted, yelled at patrol officers to shoot and kill him. [*Information regarding medical history redacted*]

- Incident 201800000512740, dated March 24, 2018, in which STORY contacted police officers and talked about his use of methamphetamines over the last seven months.

23. Toward the conclusion of his interview, your affiant advised STORY it did not appear he had been honest in the interview, specifically regarding his illicit drug use, his criminal history, or what he posted, and STORY responded he was being completely honest. When STORY was told about 18 U.S.C. § 1001, specifically that it is a crime to lie to a federal officer during the course of an investigation, and was asked if, with this knowledge, if he wished to update his statement, and STORY responded he did not.

24. After speaking with STORY, your affiant logged onto Facebook and Instagram and located accounts for STORY (Facebook profile "jerry.story.92317" and Instagram profile "story.jerry9292"). It should be noted that both profiles include "92" in the profile name, which is consistent with STORY's year of birth. Both the Instagram and Facebook accounts have a profile photograph of a subject I recognized as STORY wearing what appeared to be dark hooded sweatshirt. When your affiant contacted STORY on November 6, 2020, he was wearing a dark hooded sweatshirt. It should also be noted that, similar to Twitter account "@JerrySt66983610," and the associated Gmail

7

account to the Twitter profile, jaystory0121@gmail.com, the name attributed to the Twitter account was "Jerry Story" and the name attributed to the Instagram account is "Jay Story."

25. On November 6, 2020, your affiant contacted A.T. via telephone. It should be noted that STORY directed threats against A.T. and her sister Z.T. in Phoenix PD Incident 201900001054129. Upon contact, A.T. said she and her sister, Z.T., were listed as the protected parties against STORY in an order of protection. A.T. said Z.T. dated STORY for "maybe a year" and at that time STORY was on steroids and excessively drinking alcohol. A.T. said after Z.T. broke up with STORY, he started using methamphetamines.

26. A.T. said the methamphetamines "changed STORY's thought process" and he started having delusions. When asked for examples of STORY's delusions, A.T. responded STORY began to think her, A.T.'s and Z.T.'s, father is "the president of the CIA" who broke into his, STORY's, apartment. She also said STORY would leave her and Z.T. hundreds of messages a day, via text messages and Facebook. When asked more specifically what was said in the messages, A.T. said STORY had photos of himself smoking methamphetamines and had status updates of him wanting to kill her and Z.T., calling Z.T. a "lying whore"

27. When asked, A.T. said she kept screenshots of the messages and posts by STORY due to their order of protection hearings and criminal cases involving STORY. She said she would email your affiant copies of the messages later that day.

8

28. On November 9, 2020, your affiant received an email from A.T. including 19 images of screen shots of messages from STORY. These messages appear consistent in language and content with the messages posted on Twitter by account "@JerrySt66983610," specifically including references to Z.T.'s family as "molesters" that "did evil shit"; delusions of STORY relating to STORY's brain; references to a grandmother; frequent use of the terms "bitch," "whore," and "cunt"; and a reference by "@JerrySt66983610" saying "getting off to my exs bf fuckin her" which appears similar to a reported text from STORY to Z.T. saying "Dude u fucks even give me boners when I think of u."

29. Some of the screenshots sent by A.T. included messages from the same Facebook account previously located for STORY (as indicated by the same profile photograph shown in the profile picture). Comments listed from this Facebook profile include on November 30, 2019 "Going to [Z.T.'s] to fuk that cint up for fucking my life" (name in the quotation abbreviated by your affiant), as well as on November 12, 2019, "my life is destroyed cause I knocked on a door. Tim will pay. They all are in on it. But I'm a lyer and a theif." It should be noted that on July 7, 2019 (as detailed in Phoenix Police Department report 201900001158963), STORY was arrested for violation of the order of protection against A.T. and Z.T. when he knocked on their apartment door.

30. On December 14, 2020, search warrants were served on Facebook, Google, and Twitter for content, subscription, and related information for the accounts referenced above. In its response, Twitter disclosed a file including the tweets made by the account. The threatening tweets identified by the USSS PID screenshots provided to me are

included in the production made by Twitter in response to the search warrant, as well as additional tweets. In reviewing that file, I identified a number of tweets threatening to harm Individual 1 and her family, including the following:

| Date | Redacted Summary of Statement |
|---|---|
| June 2, 2020 | @[Individual 1] [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 2, 2020 | @[Individual 1] [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 2, 2020 | @realDonaldTrump [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 2, 2020 | @realDonaldTrump [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 2, 2020 | [*Threat to inflict bodily harm upon Individual 1*] |
| June 2, 2020 | [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 3, 2020 | @[Individual 1] [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 3, 2020 | @[Individual 1] [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 3, 2020 | @[Individual 1] [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 7, 2020 | @[Individual 1] [*Threat to inflict bodily harm upon Individual 1*] |
| June 7, 2020 | @[Individual 1] [*Threat to kill and inflict bodily harm upon Individual 1*] |

| Date | Redacted Summary of Statement |
|---|---|
| June 7, 2020 | @[Individual 1] [*Threat to inflict bodily harm upon Individual 1*] |
| June 8, 2020 | @[Individual 1] [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 8, 2020 | @[Individual 1] [*Threat to kill and inflict bodily harm upon Individual 1*] |
| June 9, 2020 | @realDonaldTrump [*Threat to inflict bodily harm upon Individual 1*] |

31. Twitter further disclosed that the date of birth listed for the account that made the threatening statements is "1992-XX-XX." Google disclosed the same date of birth in the subscriber information for the associated account for "jaystory0121@gmail.com." According to NCIC record checks, this matches Defendant STORY's date of birth. Additionally, the tweets reviewed in response to the search warrant include references to having a girlfriend with the same name as STORY's ex-girlfriend, Z.T. (e.g., [*reference to portion of threat redacted*]). Further, some of the tweets appear to identify the author as "Jerry" through seemingly grandiose statements (e.g., a June 2, 2020, tweet including "Jerry is king," and a June 1, 2020, tweet including "All hail jerry. The world needs me. . . . I'll save earth.").

32. Further evidence comes from tweets from the Twitter account referencing the user's self-cutting. For instance, on June 9, 2020, STORY's tweets included statements like "I'm gonna be so cut up I'm gonna look like a burn victim," "If this is your dick I'm stabbing myself until I bleed out," and "I'm slicing myself quite a bit." The

11

Twitter production also includes what appears to be a self-recorded video file showing a man's arms and legs, consistent with Story's, with numerous cuts over them. Twitter also produced two images of what appears to be drug paraphernalia.

33. [*Information regarding medical records redacted*]

34. In light of the materials produced by Twitter and the other service providers, as well as the other records described above, your affiant has made additional efforts to locate and re-interview STORY. On February 11, 2021, your affiant again spoke with T.B., STORY's mother. T.B. explained that she did not know where STORY was, and T.B. further informed your affiant that she had since obtained her own order of protection against STORY because of death threats he made to her. Specifically, T.B said STORY told her "I'll just snap your neck and be over with it." [*Reference to portion of threat redacted*] T.B. provided me with a copy of the order of protection, which was signed by state authorities on December 23, 2020, and prohibits contact by STORY with T.B. According to T.B. and the Phoenix Police Department, this most recent order of protection had not been served on STORY because they had not been able to locate him.

35. At present, STORY's location is unknown to me. I respectfully request that an arrest warrant be issued for STORY.

## **CONCLUSION**

36. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that STORY violated 18 U.S.C. § 879 (Threats Against Protected Persons). This affidavit is being sworn telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose. I have

thoroughly reviewed the affidavit and attest that there is sufficient evidence to establish probable cause that the defendant committed the crimes alleged.

Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

James Lamerson
Special Agent
United States Secret Service

Subscribed and sworn to telephonically this __25__ day of February, 2021.

HON. EILEEN S. WILLETT
United States Magistrate Judge